Harvey H. LANE, Jr., and Sterling Holloway, Appellants,

v.

Robert O. PHILLIPS et ux., Appellees.

No. 7566.

Court of Civil Appeals of Texas, Beaumont.

May 16, 1974.

Motion for Rehearing Overruled June 6, 1974.

joint venture for the purchase and development of a large tract of land and we will designate the parties as they appeared in the trial court.[1]

The joint venture, which is the subject of this litigation, was known as the "Sterling Holloway Trust," created by a written instrument dated December 13, 1971. The respective interests of the joint venturers were Holloway, 50 percent; Harvey H. Lane, Jr., 25 percent; and Robert O. Phillips and wife,[2] jointly, 25 percent.

The purpose of the joint venture was to consummate the purchase, development, and sale of a large tract of land in Matagorda County known as the Culver Tract, part of which Holloway had agreed to purchase, with an option to purchase the remainder. The cash payment of $220,000 was obtained from an Austin bank upon a note signed by Holloway, Lane and Phillips. While each was unconditionally liable to the bank for the entire face of the note, the joint venture agreement fixed their liability internally in proportion to their ownership in the venture.

The written agreement, dated December 13, 1971, fixed the rights, duties, and obligations of the parties inter se, one of which bound Phillips to keep and maintain accurate books and records of the joint venture. Pending the expiration of the six-months holding period necessary to qualify the venture for long-term capital gains treatment under the tax laws, little actual progress was made toward the development of the land. During most of this period Phillips was in the Philippine Islands attending to other personal business interests.

The original dispute between the parties centered around their differing versions of the plan of liquidation of the note of $220,000 used as the down payment on the

John W. Stayton, Austin, for appellant.

James P. Hart, James H. Keahey, Austin, for appellee.

KEITH, Justice.

The appeal is from a judgment which ordered an accounting in the dissolution of a

---

1. Appellants herein, whom we have designated defendants, actually brought suit first seeking a declaratory judgment. Appellees, whom we have designated as plaintiffs, brought suit within a few days thereafter seeking an accounting of the joint venture along with damages. The causes were consolidated for trial.

2. Hereafter we will speak of the plaintiffs, Mr. and Mrs. Phillips, as "Phillips."

Culver lands. Defendants claimed that it would be reduced at maturity, June 2, by the payment of the interest due thereon and $100,000 paid on the principal. Plaintiffs contended that it was to be renewed at maturity with liquidation being from funds generated by the venture. As early as May 1, Holloway wrote to Phillips, then out of the country, advising him that $100,000 would be due on the note on June 2, and inquired of Phillips if he would be in position to pay his $25,000 share thereof.

Phillips advised Holloway by telephone about May 17 that he was not going to make this payment on June 2; and, on the following day, Holloway wrote to him about an alternate and diminished participation in the venture. Phillips did not respond. Holloway and Lane paid the bank $100,000 and accured interest on June 2 from their own funds, renewed the note for the balance, and joined in a lengthy letter to Phillips which, in effect, terminated the joint venture as to Phillips.

Although each party supported his version of the liquidation schedule of the note, no one contended that it was to be paid in full on its maturity date of June 2, and the joint venture agreement was silent on the subject. Both theories were submitted to the jury; but, the jury failed to find in favor of either party, returning "we do not" answers to each of the special issues submitting the differing theories.

The jury returned these answers to the several special issues which we now summarize: (1) *We do not*, to an inquiry asking if Phillips agreed with Holloway that the parties would make a substantial reduction of the principal of the note on June 2. (3) *We do not*, to an inquiry asking if Phillips represented to Holloway that he would have funds available to pay his share of a substantial reduction on the note on June 2. (8) *We do not*, to an inquiry asking if Holloway, Lane, and Phillips agreed that when the note became due on June 2 they would make no reduction in principal but pay only interest and renew the note. (10) $228,000 was the reasonable cash market value of the excess of the assets over the liabilities of the joint venture on June 2. (15) *We do*, to an inquiry asking if Phillips failed to keep himself properly informed of the affairs of the joint venture between December 13, 1971, and June 2, 1972. (16) *We do not*, to an inquiry asking if such failure violated the fiduciary duty to Holloway and Lane. (17) *We do not*, to an inquiry asking if Phillips failed to give reasonable attention to the affairs of the joint venture between December 13, 1971, and June 2, 1972. (19) *We do*, to an inquiry asking if Lane failed to furnish Phillips such information as was necessary to maintain proper records of the joint venture. (20) *We do*, to an inquiry that but for such failure to furnish information, Phillips would have maintained proper records.

The Court accepted the verdict of the jury; and, both parties having made motions for judgment, the Court made findings from the uncontradicted record: (1) The joint venture was dissolved "by the express will" of Holloway and Lane by the exclusion of Phillips therefrom on June 2, 1972. (2) The business of said joint venture having been continued by Holloway and Lane after its dissolution on June 2, 1972, Phillips was entitled to recover the value of his interest therein on said date. (3) There was no evidence introduced upon the trial showing any damage caused to Holloway or Lane because of the dissolution and, therefore, no reduction should be allowed from the value of Phillips' interest therein. (4) Phillips' interest in the joint venture on June 2 was one-fourth of the value of all of the assets thereof less one-fourth of all of the liabilities on said date.

Whereupon, judgment was entered in favor of Phillips against Holloway and Lane in the amount of $57,000; and it was decreed that, after payment of said sum, Phillips would have no interest in the joint venture nor any obligation to pay any of

the liabilities thereof; that Holloway and Lane indemnify Phillips and hold him harmless against all present and future liabilities of said venture.

Holloway and Lane have appealed from the order overruling their amended motion for new trial.

The parties have favored us with excellent briefs wherein all of the areas of the dispute are treated in a scholarly manner. Although defendants have presented eight points of error, they are summarized in the final post-submission argument in this terse manner: (1) Plaintiffs were never members of the joint venture. (2) Plaintiffs acquired no interest in the assets of the joint venture. And, (3) there was no evidence of the value of plaintiffs' alleged interest in the joint venture. We disagree and affirm the judgment of the trial court for the reasons now to be stated.

The thrust of defendants' argument under the first contention advanced is expressed in this language found in their brief:

"[I]t is clear that under either the old law or under the Uniform Partnership Act no joint venture in which the Phillipses were members ever came into legal existence. There may have been a 'paper' joint venture or partnership, but there was no joint venture in fact. This follows from the fact that the Phillipses did absolutely nothing in furtherance of the enterprise."

The agreement, after identifying the parties and the land in the first two paragraphs, continues:

"It is hereby expressly agreed that the parties hereto shall form, *and by this agreement do form*, a Joint Venture, or partnership for the consummation of the purchase, the ownership, management and sale of said property. This Joint Venture shall be operated under the name "STERLING HOLLOWAY TRUST."[3]

After fixing the respective interests in the venture, the agreement specifically provided that each adventurer would be liable for all debts and obligations incurred by the partnership in the same proportions, "including but not limited to the Five Hundred Fifty [Thousand] ($550,000.00) Dollar Vendors' Lien Note executed in favor of the Sellers [Culvers] of said 480 acres, and a Two Hundred Twenty Thousand ($220,000.00) Dollar note payable to the Austin National Bank of Austin, Texas, representing a loan the proceeds of which were used to pay the down payment for said 480 acres."

■ The parties are not in accord as to the law governing our determination of the relationship which was created by their execution of the joint venture agreement just noticed. We believe that our determination must be made under the rule announced in Thompson v. Duncan, 44 S.W. 2d 904, 907 (Tex.Com.App., 1932), wherein Judge Leddy said:

"Courts do not treat a joint venture as identical with a partnership, yet it is universally held that such relation is so similar in its nature to a partnership and in the contractual relation created thereby that the rights as to the members are governed by substantially the same rules that govern partnerships."

See also, Johnson v. Peckham, 132 Tex. 148, 120 S.W.2d 786, 788 (1938), and Woodrum v. Cowan, 468 S.W.2d 592, 598 (Tex.Civ.App., Austin, 1971).[4]

Indeed, in Weatherford v. Lee, 364 S. W.2d 730, 733 (Tex.Civ.App., San Antonio, 1963, error ref. n.r.e.), it was held: "A

---

3. All emphasis herein has been supplied unless otherwise indicated.

4. Woodrum v. Cowan was reversed in part and modified by the Supreme Court. 472 S.W.2d 749 (Tex.1971). We cite the line of cases mentioned by the Court of Civil Appeals under syllabus three (468 S.W.2d at 598–599), the validity of which was not undermined by the action of the Supreme Court.

joint venture is governed by the same rules as a partnership." This overly broad statement is subject to the qualification set out by our Supreme Court in the case of Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704, 709, 59 A.L.R.2d 1011 (1956), saying:

> "To constitute a joint adventure there must be a community of interest and participation in the profits. *It is in the nature of a partnership* engaged in the joint prosecution of a particular transaction for mutual profit. Holcombe v. Lorino, 124 Tex. 446, 79 S.W.2d 307.

> "For a joint adventure to exist there must be a community of interest both as to the profits and losses, if any."

See also, W. H. Hodges & Co. v. Donley County State Bank, 407 S.W.2d 221, 224 (Tex.1966).

■ Having reviewed the written agreement between the parties, the uncontradicted evidence as to the borrowing of the money from the bank to make the down payment upon the land, and the testimony of the parties, we are of the opinion that the joint venture came into legal existence at least as early as the date of the agreement, December 13, 1971. Art. 6132b, § 6(1), Vernon's Ann.Civ.St. The usual tests of determination of the existence of a partnership were all present. Cf. Burr v. Greenland, 356 S.W.2d 370, 376 (Tex.Civ. App., El Paso, 1962, error ref. n.r.e.); First National Bank of Brownwood v. Chambers, 398 S.W.2d 313, 317 (Tex.Civ. App., Eastland, 1965, no writ). See also, Box v. Associates Investment Company, 389 S.W.2d 687, 690 (Tex.Civ.App., Dallas, 1965, no writ).

Being of the opinion that Phillips became a member of the joint venture which became effective on December 13, 1971, we overrule defendants' first point of error.

■ In considering the defendants' second contention, that the plaintiffs acquired no interest in the assets of the joint venture, we recognize the rule defendants urge upon us: "[T]he law of contracts is the backbone of the law of partnership."[5] Defendants argue from this premise that performance by Phillips of his obligations under the agreement was a condition precedent to the acquisition of any interest in the assets of the joint venture; and, not having performed (i. e., paid his share of the note to the bank on June 2), he had "no judicial remedy with respect to such interest until and unless they [Phillips and wife] perform." Again we disagree and deny the contention so advanced.

Holloway recognized, in his letter of May 18, 1972, to Phillips, that "our joint-venture agreement does not expressly provide for a forfeiture of the interest of a party not fulfilling his obligations." Yet, in his letter of June 2, Holloway was joined by Lane in action which amounted to a forfeiture of all of Phillips' rights in the venture.[6]

The late Justice Norvell, while upon the Court of Civil Appeals, spoke to the subject of forfeiture under a joint venture in the case of Welch v. Brock, 195 S.W.2d 940, 943 (Tex.Civ.App., San Antonio, 1946, error ref. n. r. e.), saying:

> "Brock's title or interest is based upon the original agreement whereby the parties agreed to acquire the property for

---

5. Defendants cite the following cases in support of the quotation: Rush v. First Nat. Bank, 160 S.W. 319 [Tex.Civ.App., Amarillo, 1913; affirmed 210 S.W. 521 (Tex.Com.App., 1919, holding approved)]; Allison v. Campbell, 117 Tex. 277, 1 S.W.2d 866 (1928); Kent v. National Supply Co. of Texas, 36 S.W.2d 811 (Tex.Civ.App., Waco, 1931, error ref.).

6. This letter advised Phillips that defendants had reduced and renewed the note to the bank,

returned Phillips' contribution to the operating account of the venture, and continued: "[B]y this letter you and Mrs. Phillips are hereby released and discharged from all commitments, obligations, and liabilities imposed upon you in the original joint-venture agreement of the Sterling Holloway Trust of December, 1971."

the joint benefit. The mere fact that Brock may have, at one time or another, been delinquent in payments due under the agreement would not ipso facto cause his interest in the property to terminate or be destroyed. The agreement as found by the jury does not contain a provision to that effect."

Although Justice Norvell did not cite authority for this clear holding, it is well supported by the recognized authorities. Thus, in 46 Am.Jur.2d, Joint Ventures, § 38, at 58 (1969), the textwriter says:

"A joint venture is to be conducted by the parties to the undertaking, and the failure of any party completely to perform his part does not forfeit his fully acquired interest. Notwithstanding defaults and omissions, each has an interest in such assets as have been preserved or accumulated. Thus, default by a member of a joint venture will not justify the other members in excluding him from participation in the accrued assets." (footnotes omitted)

See also, Thompson v. Duncan, supra, wherein the court held that while defaults could bring about a dissolution of the joint venture, such termination would not work a forfeiture of the rights acquired by the defaulting joint venturer. Instead, said the court, "It is the general rule that when dealing with partnership or joint venture agreements the remedy of the complaining party, or his conventurer, is in equity for an accounting and settlement of the partnership affairs." (44 S.W.2d at 907)

As noted by Holloway, there was no provision in the agreement authorizing a forfeiture for nonpayment of any obligations due thereunder. This language from Henshaw v. Texas Natural Resources Foundation, 147 Tex. 436, 216 S.W.2d 566, 570 (1949), is operative:

"Since forfeitures are not favored, courts are inclined to construe the provisions in a contract as covenants rather than as conditions. If the terms of a contract are fairly susceptible of an interpretation which will prevent a forfeiture, they will be so construed. . . .

"Unless the consideration in a contract is expressed in terms which unmistakably will demand a forfeiture for nonperformance, a mere breach of such terms will not authorize the cancellation of the contract."

■ Plaintiffs' rights became fixed when the parties borrowed the money from the bank, acquired the land from the Culvers (subject to the vendors' lien), and executed the joint venture agreement. There was no condition precedent to the *formation* of the contract of the joint venture; and, there being no provision for forfeiture of plaintiffs' rights thereafter, an accounting was his appropriate remedy. Defendants' second point of error is overruled. Welch v. Brock, supra.

Defendants challenge the jury finding that the reasonable *net* cash market value of the joint venture on June 2, 1972, was $228,000, by no evidence and insufficient evidence points. In passing upon this series of points (Nos. 4, 5, 6, and 7), we will follow the usual rules. As to the no evidence points, we will consider only the evidence supporting the finding of the jury; as to those claiming insufficiency of the evidence to support the finding, we will consider the record as a whole.

Plaintiffs offered the only expert witness on value, E. Charles Lewis, whose qualifications are not challenged. His testimony covers many pages of the statement of facts and it is sufficient to say that under his testimony the jury's finding was within the range of that given by Lewis. Under Lewis' testimony, the two Culver tracts—one of which had been purchased by the joint venture and the other upon which the ventures had an option—were worth in excess of $1,500,000.00. Although he was cross-examined vigorously, he remained firm in his evaluation of the property. Defendants offered no testimony contradicting this offered by the plaintiffs.

■ Market value of property is of necessity a matter of opinion. 2 McCormick & Ray, Texas Law of Evidence (2d ed. 1956), § 1422, p. 256, et seq., and cases therein cited. The jury, as the trier of the facts, was not bound by the expert opinion; but, the weight to be given to such testimony is ordinarily within the exclusive province of the jury. State v. Haire, 334 S.W.2d 488, 491 (Tex.Civ.App., Austin, 1960, error ref. n.r.e.). All of defendants' evidentiary points relating to the value of the assets of the joint venture are overruled.

In arriving at their answer to Special Issue No. 10,[7] the jury was required to find separately the reasonable cash market value of the assets of the joint venture and the total of the liabilities thereof. Only after subtracting the total liabilities from the value of the assets could an answer be given to the question. Defendants now urge that there was no evidence to establish the amount of liabilities; hence the answer lacks support in the evidence, regardless of Lewis' valuation testimony.

Phillips offered in evidence an audited statement of the cash receipts and disbursements of the joint venture from December 6, 1971, to June 2, 1972, the accuracy of which Holloway declined to question. This audit showed that after payment of the interest upon the $220,000 note and return to the joint venturers of their contributions to the venture's bank account, but without taking into consideration the $100,000 principal reduction on the note at the Austin Bank, the venture had a cash balance of $1456.94.

Defendants' principal contention under this point is that this audited statement of receipts and disbursements omits the liability item of accounts payable for land planners, engineers, architects, etc. These liabilities had been incurred by defendant Lane pursuant to a supplementary letter agreement with Holloway dated January 25, 1972, which had been executed without the knowledge of Phillips or his participation therein. According to *Holloway*, these were not liabilities of the Sterling Holloway Trust but of Lane, d/b/a Matagorda Dunes Development Company. Under the joint venture agreement, Lane's obligations were not those of the venturers but were his own.

Having reviewed the evidence in accordance with the established rules and finding no merit to defendants' evidentiary points relating to the amount of the liabilities of the venture, each of such points is hereby overruled.

■ Finally, defendants argue that the trial court erred in not offsetting the judgment against Holloway and Lane in the amount of $57,000 with the $25,000 Holloway paid the Austin Bank on June 2 when Phillips declined to participate in the partial payment. The short answer to the contention so advanced is that the *only* evidence of liabilities introduced before the jury disclosed the note to be in the principal amount of $220,000; thus, the full debt structure was taken into consideration when the evidence was introduced.[8] We agree with plaintiffs when they argue: "The trial court did not err in refusing to give Holloway and Lane double credit by

---

7. *Special Issue No. 10*: "What do you find from a preponderance of the evidence was the reasonable cash market value of the excess, if any, of the assets over the liabilities of the Sterling Holloway Trust Joint Venture on June 2, 1972?" This was followed by the boiler plate definition of "reasonable cash market value." The jury answered the issue: $228,000.00. The judgment was for one-fourth that figure, or $57,000.

8. The auditor's report had footnote C appended reading: "The accounting records of the Joint Venture do not reflect a cash transaction involving a $100,000.00 payment on June 2, 1972 on the Austin National Bank note which was made by two joint venturers individually from personal funds."

taking a net valuation based on this full debt structure and then reducing the net valuation by a portion of that debt structure ($100,000) a second time."

The record reflecting no error, the judgment of the trial court is in all things affirmed.