Gordon R. PATE and Joe Michael
Dodson, Appellants,

v.

Kyle McCLAIN, Appellee.

No. 09–88–009–CV.

Court of Appeals of Texas,
Beaumont.

April 13, 1989.

Appellant's Rehearing Overruled
May 3, 1989.

Appellee's Rehearing Overruled
May 3, 1989.

Tom Peterson, Wendell C. Radford, Beaumont, for appellants.

Douglas R. Drucker, Houston, Greg Thompson, Port Arthur, for appellee.

## OPINION

BROOKSHIRE, Justice.

Suit involving a partnership. Plaintiff, Kyle McClain, had been a partner with Gordon R. Pate and Joe Michael Dodson. The partnership law firm was styled "Pate, Dodson and McClain." That partnership to practice law came into being on January 1, 1986. It ceased as an on-going partnership of attorneys on June 20, 1986. On that date, McClain voluntarily left the partnership.

McClain initially sued for his alleged full share of the partnership's undistributed net earnings for the April–June 1986 quarter and also for a full accounting. Later he pleaded that during the April–June 1986 quarter and prior to his own withdrawal from the law firm partnership, the total sum of $137,500 had been paid to the partnership, being a contingent fee interest in a settlement made in the *Donald Arrant v. Caterpillar Tractor Company* litigation. McClain abandoned his claim for a complete accounting of the partnership and, instead, endeavored only to recover a 15% net interest in two specific contingent fee contracts. The first contingency fee contract was the *Arrant* case. The second contingency fee contract was known as the *Whitehead* case, the total fee being $17,-433.33.

The contract between Arrant and Mr. Pate was agreed to on December 27, 1984, which date was more than a year prior to the formation of the "Pate, Dodson and McClain" partnership. The *Whitehead* contract was entered into between the law offices of Pate and Dodson and Billie K. Whitehead in August, 1985, some four months before the formation of the last partnership, being the one in litigation. Prior to the last partnership, there was a prior partnership composed of, and styled, "Pate and Dodson". At an appropriate time, the trial court *granted defendant Dodson's motion for instructed verdict with regard to any and all issues of a breach of fiduciary relationships or fiduciary obligations existing solely on the part of Mr. Dodson.*

The case was submitted to the jury. The court gave the usual and correct definitions of direct and circumstantial evidence, preponderance of the evidence and other necessary and proper definitions and instructions. The trial court defined the term "partnership", when used in a special question, as that partnership consisting of Gordon R. Pate, Joe Michael Dodson and Kyle McClain and that the "term of the partnership" meant the period of time from January 1, 1986, through June 20, 1986. The court further instructed the jury that:

"[A] partner's interest included his share of the 'profits' of the partnership and his share of the value of any 'partnership property'.

" 'Profits' means income minus expenses.

" 'Partnership property' means all property originally brought into the partnership stock or subsequently acquired by purchase or otherwise on account of the partnership."

The members of the jury were unequivocally charged that:

"You are the sole judges of the credibility of the witnesses and the weight to be given their testimony...."

Also, the term "partnership" was defined correctly. No attack is made, in this ap-

peal, on the definition of "partnership." No written articles of partnership existed.

In the Charge of the Court, we find:

### "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that the $137,500.00 received as attorney's fees in the '*Arrant* case' is income of the 'partnership'?

"Answer: 'We do' or 'We do not'. <u>We do</u>.

### "SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that the $17,433.33 received as attorney's fees in the '*Whitehead* case' is income of the 'partnership'?

"Answer 'We do' or 'We do not'. <u>We do</u>.

### "SPECIAL ISSUE NO. 3

"What sum of money, if now paid in cash, would reasonably compensate the Plaintiff for his unpaid share of the profits of the 'partnership', if any?

"Answer in Dollars and Cents, if any. $23,250.00"

There were certain other Special Issues submitted that were predicated on "We do" or "We do not" answers, which were properly left unanswered. These issues submitted the theory of whether, during the "term of the partnership", the *Arrant* case and the *Whitehead* case became partnership property.

### *Attorney's Fee Issue—Special Issue 9*

Special Issue 9 was answered. The jury was instructed, as to Special Issue 9, that it was to consider only the services rendered by the Plaintiff's attorney on the *Arrant* claim. The jury found the reasonable fee for the plaintiff's attorney's professional services to be $14,000 for the preparation and trial in the district court and $7,500 for services in an appeal to the Court of Appeals. An additional $5,000 was found for services in pursuing an appeal to the Texas Supreme Court. A judgment was entered ordering McClain to recover from Pate and Dodson the sum of $23,250 plus prejudg-

ment interest. In addition, McClain recovered a total of $26,500 for attorney's fees, depending on the appeals taken.

### *The No Evidence Points*

The Appellants presented a number of points of error as a group. These points of error averred that the evidence conclusively established that the *Arrant* and *Whitehead* contingency fee contracts were not the partnership property of Pate, Dodson and McClain; that the answers to Special Issues Nos. 1, 2 and 3 do not support the judgment in favor of the Plaintiff; that the Court erred in entering the judgment because there was no evidence of the net profits, because there was no evidence of the net profits of the last partnership in question; that there was insufficient evidence to establish the net profits of the partnership; that there was no evidence of the net profits of the *Arrant* and *Whitehead* fee contracts; that there was insufficient evidence to establish the net profits of the *Arrant* and *Whitehead* contingency fee contracts; that there was no evidence to support the verdict of the jury; and, that the evidence was insufficient to sustain the verdict of the jury.

In analyzing and reviewing the no evidence points (also sometimes referred to as the legal insufficiency points) on appeal, the intermediate appellate court must consider only the evidence, testimony, documents (the entire record) and reasonable inferences therefrom which support the jury's findings. We must disregard all evidence and all inferences which are contrary to, and against, the jury's findings. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Potter v. Garner*, 407 S.W.2d 537 (Tex.Civ.App.—Tyler 1966, writ ref'd n.r.e.); R. Calvert, " '*No Evidence' and 'Insufficient Evidence' Points of Error*", 38 TEXAS L.REV. 361 (1960); W. Garwood, *"The Question of Insufficient Evidence on Appeal"*, 30 TEXAS L.REV. 803 (1952). We have adhered to the rules and standards set out in the authorities immediately above.

The partnership of Gordon Pate and Joe Dodson was formed on July 1, 1985. McClain remained as an associate of that prior partnership but did not attain partner status. McClain, however, did, during his four-year tenure, work on both the *Arrant* and *Whitehead* cases. Testimony from Mr. Pate exists in the record that, upon the formation of the Pate, Dodson and McClain firm, *there would be a division of profits.* Seventy per cent of the profits would be payable to the senior partner *and fifteen per cent, of the profits would be payable each to Mr. Dodson and Mr. McClain.* Further, there is testimony from the senior partner that there were no other discussions concerning partnership details or provisions other than the sharing of profits. A legal firm, as a partnership with McClain as a 15% partner, was admitted and established in the record.

*The Insufficient Evidence Points*

██ When the new partnership was formed, the office space of the previous firm, of Pate and Dodson, was not changed and the files remained in the same office space. Mr. Pate testified that he handled all the finances for Pate, Dodson and McClain, as the managing partner of the partnership. McClain and Dodson both actively participated in the trial of the *Whitehead* case, in a juried proceeding, in Jasper County, in April of 1986. Pate and Dodson, however, tried the *Arrant* case to the federal jury in Beaumont in May of 1986. There is a concession in the record that the *Arrant* case was tried during the term of the partnership which included McClain as a partner. The *Arrant* case was settled on May 20, 1986, after about three days of trial. *The record demonstrates that $29,704.92 in expenses were paid out by the partnership of Pate, Dodson and McClain in connection with the Donald Arrant v. Caterpillar Tractor Company litigation.*

The record also demonstratively and clearly reflects that *a figure in excess of $3,000, which related in the expenses in the prosecution of the Whitehead litigation, was paid out by the partnership of Pate, Dodson and McClain.* These *Whitehead* case expenses are shown in great detail by an exhibit in the record, which is two pages long on letter-sized stationery, double spaced. In general, expenses and overhead, such as rent, staff salaries, postage, telephone expenses, which were used in the prosecution of these two cases, were deducted as expenses which, in turn, necessarily reduced McClain's share of money in the profits from these two cases. Some of these expenses are revealed by several exhibits in the record. If the *Arrant* case had been either lost or not settled, Mr. Arrant would not have been expected or would not have reimbursed the expenses to his attorneys.

There was one fee relating to *Piping Accessories, Inc.,* which arose out of a successful prosecution in the amount of $45,273.38. The record reflects that one-third of that figure, or about $15,000, plus some expenses, were put on the profit and loss statements of the partnership for April, 1986, although the matter had been settled in the latter part of 1985. In fact, the litigation was closed out on December 14, 1985. The fact that this $15,000 fee was placed in the April 1986 statement is significant; we perceive the same has probative value.

In the case of *Donald Arrant v. Caterpillar Tractor Company, et al,* there was an actual court order entered, concerning attorneys' fees, in civil action No. B–85–181 CA in the Beaumont Division of the United States District Court for the Eastern District of Texas and the United States District Judge Presiding, Hon. Joe J. Fisher, ordered that the plaintiffs' attorneys, Pate, Dodson and McClain be, and were awarded one-third of any sums recovered by way of settlement or judgment and, further, the order was that the *defendants were to pay the said sums directly to the said plaintiffs' attorneys, Pate, Dodson and McClain.* In the record, there was an exhibit entitled "Settlement Statement" wherein it was shown that, as to the attorneys' fees, the amount paid to Pate, Dodson and McClain was the total sum of $137,500. Mr. Dodson received his share of the fee generated by the *Arrant* case. Mr. Dodson testified that the expenses of

the *Arrant* case were paid by the *partnership of Pate, Dodson and McClain* and Mr. Dodson recalled that the expenses were something in excess of $21,000. Mr. Dodson also opined that, if Mr. McClain had stayed with the firm, McClain would probably have shared in the Billy Whitehead contingent fee.

On July 17, 1986, an attorney of record for Mr. McClain wrote a letter to the Honorable Gordon R. Pate which was also addressed to Pate and Dodson. The letter contended that McClain had not received the full amount of money that had been promised to him. The letter stated that the client, McClain, did know of a $137,500 fee that was paid to the firm in June of 1986 as a result of the *Arrant* litigation. It is interesting to note, too, that the letter claimed that the previous amount tendered, of $2,827.67, designated as a "Partner draw," was not satisfactory and was not payment in full. We think this letter, from the Honorable Douglas R. Drucker, bearing date of July 17, 1986, has cogency and relevancy concerning some later points of error involving the doctrine of accord and satisfaction. Basically, the letter demanded that the $137,500 fee be included as partnership income in the partnership in which McClain had a partner's interest. There were two letters from the firm of Pate and Dodson, addressed to Mr. Drucker, in re: Kyle McClain. One of the letters enclosed a profit and loss statement dated June 30, 1986. The letter stated that the firm was, and is, on a cash receipt basis. Then, on August 12, 1986, there was a second letter written to Drucker which was quite brief. It stated that the prior letter explained why McClain had already received what he was entitled to. These letters were signed by the senior partner.

There were several checks or drafts to pay the attorneys' fees and the settlement monies in the *Arrant* case. One for $50,-000 was dated May 30, 1986, and made payable, along with other payees, to Pate, Dodson and McClain. That check was from the Caterpillar Tractor Company. Then, there was a second large check from U.S.F. & G. Insurance, payable to Arrant and his attorney, Gordon Pate, dated June 10, 1986, and a check from Liberty Mutual, made payable to Arrant and others and includes his attorneys, Pate, Dodson and McClain, for $100,000, dated June 2, 1986. There is also a check from the Vanguard Money Market Trust Prime Portfolio and from the Jersey International Group, Inc., Admiral Trust, payable to Arrant, Pate, Dodson and McClain for $236,536.77, dated June 9, 1986. McClain withdrew June 20, 1986.

There are certain documentary exhibits in the record showing that these checks were received by the bank, as being in their possession, on June 17, 1986. Admittedly, the checks or drafts were all put in as items for collection. The settlement checks or drafts were received and transmitted to the bank during the term of the partnership with McClain.

There was some evidence in the record to show that certain checks, which had been received and transmitted to a bank during a certain month, were treated as income for that month without regard as to whether or not the checks actually cleared the bank in the same month. And there is definitely evidence and testimony in the record, that the jury could have believed that Donald Arrant's worker's compensation recovery, which was received in January of 1986, was shared in by McClain. Arrant had a worker's compensation claim that arose out of the same injury as the third-party action. The worker's compensation case recovery was deposited in January of 1986.

We could extend this opinion to a much greater length by discussing and analyzing other evidence and testimony, as well as numerous, detailed documents. The record is voluminous and the number of exhibits in the case exceeds 70. Following the accepted rules of appellate review, we simply cannot say that there is no evidence to support the jury's verdict. Nor can we say that there is insufficient evidence to support the jury's verdict except as dealt with below. We must bear in mind that the jury, being the sole judge of the facts proven and the credibility of the witnesses and the weight to be given their testimony, has broad discretion in believing all of one

witness' testimony or none of that witness' testimony. The jury can believe part and disbelieve part of a witness' testimony. The jury can weight the probative value and force of the documents. The jury in this case, we conclude, was within its powers and prerogatives to answer the special questions as it did, considering the direct evidence, the circumstantial evidence and the voluminous documentary evidence placed before the jury except as to Special Issue 3.

Additionally, certain funds attributable to the *Arrant* case, such as reimbursement items, were considered to be income of Pate, Dodson and McClain. There is a check involving Mr. Arrant's litigation from some attorneys and counsellors in Houston, one of whom was a Mr. Womble. That refundable cost check was made payable to Pate, Dodson and McClain. The date of that check was May 30, 1986. There exists considerable other evidence possessing probative force that the jury could and apparently did believe. Hence, we are constrained to overrule the cluster and grouping of points of error that attack the verdict on the basis of no evidence or insufficient evidence generally. *Garcia v. Insurance Co. of State of Pa.*, 751 S.W.2d 857, 858 (Tex.1988); *International Bank, N.A. v. Morales*, 736 S.W.2d 622 (Tex.1987).

Likewise, we overrule the Appellants' contention that the trial court erred in overruling the Appellants' motion for judgment non obstante veredicto. This motion maintained that the evidence conclusively established that the *Arrant* and *Whitehead* contingency fee contracts were not the partnership property of Pate, Dodson and McClain. We must disagree. Likewise, we overrule the Appellants' point of error contending that the trial court erred in overruling their motion for judgment non obstante veredicto for the reason that the jury's answers to Special Issues Nos. 1, 2 and 3 simply do not support a judgment in favor of McClain. We must hold to the contrary except as set out below.

### The Attempted Defense of Accord and Satisfaction

The next grouping of points is germane to the theory of defense known as accord and satisfaction. The Appellants advance that the trial court committed error in failing to permit a trial amendment pleading accord and satisfaction and also committed error in refusing the Appellants' requested special issue pertaining to accord and satisfaction and that the Appellants' motion for judgment non obstante veredicto should have been granted on the basis of accord and satisfaction as a complete defense in bar.

We have already referred to a letter from Mr. Drucker to Mr. Pate. The letter indicates that the amount of $2,847.65 (p. 26, Appellee's brief)—(the amount seems to be $2,827.67, per p. 55, S.F., letter from Drucker)—was not satisfactory. McClain consistently took the position that that figure was not the total, correct, complete figure. The check does not contain any language constituting a full and final release of all claims. The check was merely a check on a drawing account and that amount of money, under this record, was unquestionably due and owing to McClain. McClain notified Pate and Dodson that he (McClain) considered the check to be only a partial, and not a complete, payment. Therefore, the Appellants had notice of the contentions of McClain as early as July of 1986.

The Appellants filed no defensive pleadings alleging the affirmative defense of accord and satisfaction. They did seek a trial amendment alleging this defense when well into the trial on the merits. *We sanguinely conclude that the trial court did not abuse its discretion in refusing this trial amendment.* Since there were no pleadings to support this theory, it was not error for the court to refuse a special issue germane to this theory of defense. Furthermore, we conclude that the trial court properly overruled the Appellants' motion for judgment non obstante veredicto based on accord and satisfaction.

An unmistakable communication must be made by one party that the tender of a lesser sum is undoubtedly and unquestionably upon the condition and premise

that the acceptance of the lesser sum will constitute complete satisfaction of the underlying obligation and this clearly communicated condition must be plain, definite and certain. There should be a statement that accompanies the tender of the lesser sum, which statement also must be so clear and so explicit and so complete that the statement is simply not susceptible of any other interpretation but one of complete accord and complete satisfaction. *See Jenkins v. Henry C. Beck Company*, 449 S.W.2d 454 (Tex.1969). Mere acceptance of a tendered check, such as the one in this record, is simply not enough to constitute accord and satisfaction. *See Infra–Pak v. Carlson Stapler & Shippers Supply*, 803 F.2d 862 (5th Cir.1986). The doctrine of accord and satisfaction *is based upon a new contract by which the parties specifically and intentionally agree to the discharge of one of the parties' existing obligations by means of a lower payment. Industrial Life Insurance Company v. Finley*, 382 S.W.2d 100 (Tex.1964). This is simply not the case before us. McClain did not agree but, rather, protested and objected. McClain wanted more money—plenty more money. *See Flowers v. Diamond Shamrock Corp.*, 693 F.2d 1146 (5th Cir. 1982).

### The Dismissal of Mr. Dodson as to Fiduciary Duties

In point of error 14, the Appellants advance the proposition that the district court erred in entering a judgment for the Appellee herein for the reason that the trial court granted an instructed verdict in favor of Defendant, Dodson, with regard to any claim for breach of a fiduciary duty, as such, and that this was done after the Plaintiff, in open court, dismissed any claim against Joe Michael Dodson for the breach of any fiduciary duty owed by Dodson to McClain. As we view the record, this was a very limited type of instructed verdict and did not instruct a verdict against any plain-debt claim or money-owed claim made by McClain against Pate and Dodson. McClain was, basically, asking for a limited type of an accounting and he wanted to recover monies that he vehemently averred

were due to him arising out of his proprietary partnership interest. McClain's position and allegations at trial were separate, apart and distinct from those based on the breach of fiduciary duties by Dodson. We think that a plaintiff can recover for a debt or money owed resulting from a partnership. This cause of action is meaningfully different from a breach of a fiduciary duty owed by one partner to another. The record clearly reflects that that was certainly the trial judge's ruling on the limited motion for an instructed verdict. The record does, undoubtedly, show that the motion for instructed verdict, when argued by the counsellor for Mr. Dodson, was on the ground that the plaintiff had dismissed any claims that he had against *Mr. Dodson, acting in his fiduciary capacity as a partner.* We conclude this 14th point of error lacks merit.

### The Attorneys' Fees Question As To Amounts

The demand letter made by Drucker was directed to Mr. Pate, but it was also addressed to Pate and Dodson. It was, however, limited to the *Arrant* litigation and fee. Not only was that letter also addressed to Mr. Dodson, there was a separate carbon copy sent to Mr. Dodson. In the demand letter there is absolutely no mention made of the *Whitehead* claim. In fact, the letter specified only the $137,500 fee which definitely arose in the *Arrant* litigation.

Douglas Drucker, one of the plaintiff's attorneys, testified that he spent, before the conclusion of the trial, something slightly over 131½ hours and that his hourly fee was $135 per hour. He stated, under oath, that his total fees, as of the date he testified at the trial, concerning the attempt to recover only the Arrant money, were $17,752.20. He stated this figure was reasonable through the trial. Mr. Drucker was examined on this matter by Hon. Greg Thompson, an attorney at law at Port Arthur. The record showed that Mr. Thompson's fees were not included in the $17,000 plus figure and it was further stated that Greg Thompson was not charging any fees

at all in this entire litigation. Thompson was also McClain's attorney.

The issue on attorney's fees, being Special Issue No. 9, was limited in wording to only the services that were rendered by the plaintiff's attorney Drucker, on the *Arrant* claim. The jury found $14,000 for the preparation and trial of the case at the district court level, which was definitely lower than the sworn testimony. Under this record, and under the proper criteria for appellate review, we simply do not see a valid basis for overturning the award of the attorney's fees through the conclusion of the trial. We do not have the power or prerogative under the constitutional mandates and imperatives to disregard the fact findings of the jury when some adequate, admissible evidence of probative force was presented to the triers of fact. The case is complicated and the record is long and the exhibits are intricate and complex.

### The Recovery of Gross Income Instead of Net Profits

■ Significant and of importance as well, is the fact that Special Issue No. 1 found that $137,500 received as attorneys' fees in the *Arrant* case was income of the partnership. In Special Issue No. 2, the jury found that $17,433.33 received as attorneys' fees in the *Whitehead* case was income to the partnership. However, Special Issue No. 3 asks what sum of money, if now paid in cash, would reasonably compensate the plaintiff for his unpaid share *of the profits of the partnership*, if any; the jury answered $23,250. Therefore, the jury actually awarded more than 15% to McClain based on the total fees; that is, the gross fees, rather than the net fees. We calculate as follows: $137,500 × 15% = $20,625; $17,433.33 × 15% = $2,614.99; totalling $23,239.99. In other words, the jury awarded actually more than the 15% of the total gross fees. Special Issue No. 3 should have been limited to the amount of money to compensate the plaintiff for his unpaid share of the net profits of the partnership in the fees in the *Whitehead* and *Arrant* cases. Defendant Pate specifically objected to this Special Issue No. 3 for the reason that the jury could determine that unpaid share of the profits of the partnership could include other items or other incomes or other fees or other profits of the partnership which, hence, were not limited to the *Arrant* and *Whitehead* fees. The pleading of McClain demanded 15% of the net profits in these two fees only. Hence, we rule that there was a proper, specific objection to Special Issue No. 3.

Furthermore, the defendants at trial requested certain Special Issues in view of Special Issue No. 3 wherein they requested that the jury find from a preponderance of the evidence the "net profit of the Donald Arrant contingency fee, as well as the net profit of the Billie Whitehead contingency fee." We decide that either the objections to Special Issue No. 3 should have been sustained or that the requested issues inquiring as to the net profit of the *Arrant* fee and the net profit of the *Whitehead* fee should have been given. This would have complied with the verbal partnership agreement and would have complied with the pleadings of the plaintiff.

We recognize that Section 18(1)(a) of the Texas Uniform Partnership Act (*TEX. REV.CIV.STAT.ANN. art. 6132b* (Vernon 1970)) states each partner shall be repaid his contributions made by way of capital advances to the partnership property and that Section 18(1)(c) provides that a partner, who in aid of the partnership makes a payment or an advance beyond the amount of capital to which he agreed to contribute shall be paid interest from the date of the payment or advance. Nevertheless, in view of the way Special Issue No. 3 was requested and submitted to the jury, we think that there is some fault on each side for failing to have properly made the formal accounts of the winding down of the older and newer partnerships. Plaintiff McClain could have discovered these matters and defendants Pate and Dodson had the records in their possession—from those records the necessary formal accounts as required by *TEX.REV.CIV.STAT.ANN. art. 6132b, secs. 20, 21 and 22* could have been made.

These formal accounts and accounting expenses would have been shared, ulti-

mately, by the partners according to their relative percentage interest. In the last partnership, the interests were 70%–15%–15% and, before that, in the preceding partnership, the percentage was 80%–20%. Obviously the records were in the possession of the old partnership. Neither side absolutely insisted on a complete formal account, accounting and audit of either the partnership of Pate, Dodson and McClain or a full accounting and audit in winding down of the partnership of Pate and Dodson to show exactly what assets of Pate and Dodson, if any, were ultimately included in the later partnership in which McClain was a partner. The bookkeeper was in the employ of the old partnership.

McClain conceded that the office overhead and general expenses for the operation of the office were paid by Mr. Pate in connection with the *Arrant* case, from December of 1984 through December 31, 1985. Unfortunately, there was no written partnership agreement or articles of partnership drawn up when McClain was made a partner. The only discussion was that the profits would be divided 70% to the senior partner and 15% to Dodson and 15% to McClain. The discussions were all verbal. A carefully drafted partnership agreement in writing may well have avoided this lawsuit. McClain admitted that he did not buy into, or make a capital contribution to, the new partnership.

Plaintiff Kyle McClain in his trial pleadings said that the partners conceded and admitted that the partners mutually agreed that *all the profits and losses* would be divided among themselves on the following percentage basis: Defendant Gordon Pate 70%; Defendant Joe Michael Dodson 15%; Plaintiff Kyle McClain 15%; and he pleaded for the value of his interest upon dissolution referring only to the *Arrant* and *Whitehead* net profit fees. In his pleading the plaintiff, Kyle McClain, also concedes that the defendants used partnership time, resources and monies in connection with the preparation of these two cases. Furthermore in his prayer the plaintiff prayed that the partnership be formally wound up and terminated and that the *plaintiff recover judgment for his actual damages* plus attorney's fees, both on trial and appeal and for both prejudgment and postjudgment interest at the maximum rate allowed by law and for all costs of court.

### A Partial Remand

We therefore remand that part of the judgment having to do with the amount awarded in Special Issue No. 3 for a trial consistent with this opinion. But this remand is only partial. We find pursuant to *TEX.R.APP.P. 81* that it definitely appears to this Court that the error involved affects a part only of the matter in controversy and that such part is clearly separable without unfairness to the parties; and therefore, the judgment below shall be and is reversed only partially and a new trial is ordered as to that part affected by the error in Special Issue No. 3. We must note that Special Issue No. 3 as put in the court's charge was specifically requested by the plaintiff as clearly shown by the record.

Following *TEX.R.APP.P. 81* we also find and we are of the opinion that the error complained of in awarding the $23,250 to McClain for his interest in the contingent fees has amounted to a denial of the rights of the Appellants in such a manner as is reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case but only as to that aspect of the case. We find that that error does not affect the recovery of the $14,000 attorneys' fees for trial.

### The Dissolution and Winding up of a Partnership

Generally, we think, a suit for formal accounts or for accountings is the appropriate remedy for a partner who has breached the partnership agreement or who has withdrawn from the partnership without objection by the other partners. *See Dobson v. Dobson*, 594 S.W.2d 177 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). *See also Lane v. Phillips*, 509 S.W.2d 894 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.). This method has been recently approved in *Truly v. Austin*, 744 S.W.2d 934 (Tex.1988) (the concurring opinion by Justice Kilgarlin).

*TEX.REV.CIV.STAT.ANN. Art. 6132b, sec. 22* (Vernon 1970).

We have been cited to *Art. 6132b.* We perceive that the specially relevant, germane sections are *sections 20, 21 and 22. Section 20,* generally, requires the partners to deliver, upon demand, true and full information of all things, affecting the partnership, to any partner; *section 21,* generally, requires that every partner must account to the partnership for any benefit and hold, as trustee for the partnership, any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by that said partner of the partnership property; *section 22* provides, generally, that any partner shall have the right to a *"Formal Account"* as to partnership affairs: (a) if that partner is wrongfully excluded from the partnership business or records or wrongfully excluded from the possession of partnership property and assets by his co-partners, (b) if such rights exist under the terms of any agreement, (c) such rights as provided by *section 21* (summarized immediately above), (d) *whenever other circumstances would render a formal account to be just and reasonable.*

In brief, we conclude that the requested, but refused, Special Issues offered by the defendants, inquiring if the contingency fee contracts were partnership property of Pate, Dodson and McClain, are merely shades or phases of, Special Issues 1 and 2. However, the requested Special Issues offered by the defendants inquiring about the "net profit" of the Arrant contingency fee and the "net profit" of the Whitehead should have been submitted. It was error not to do so. This is correct because Special Issue No. 3 did not limit the jury to the "net profits" of the Arrant and Whitehead fees, which were the only fees McClain pleaded for. The defendants raised these "net profit" issues by some evidence, such as direct case expenses. Moreover, as calculated above, the jury's answer to Special Issue No. 3 is mathematically incorrect and legally impermissible under the pleadings. We think the "net profits" of the two fees must be established.

As we read and analyze the brief of the Appellants, containing 22 points of error, we perceive that no direct attack was made on Special Issues 1 or 2, or the answers thereto, on the basis of no evidence, insufficient evidence or being against the great weight and preponderance of the evidence.

We think that the documentary evidence in the case, with the verbal testimony, is an amply sufficient basis for sustaining the jury's answers to Special Issues 1 and 2. They are the basic liability issues and we deem that they are not now contested. Nor does the dissenting opinion attack the special issues other than Special Issue 3.

Therefore, to give a practical, utilitarian, pragmatic construction to *TEX.R.APP.P. 81,* we can and do properly order a partial remand. *Bertsch & Co., Inc. v. Spells,* 687 S.W.2d 826 (Tex.App.—Eastland 1985, writ ref'd n.r.e.); *Matador Pipelines of Texas, Inc. v. Martin,* 684 S.W.2d 165 (Tex.App.— Houston [14th Dist.] 1984, writ ref'd n.r.e.).

We deem it would be a waste and duplication of judicial time and resources as well as expense to the litigants to completely retry Special Issues 1 and 2 and the special issues relevant to McClain's attorney's fees.

Drucker testified that a reasonable fee for the appeal of the entire case to the Court of Appeals would be $7,500.00. However, Drucker did not segregate the attorney's fees for the appellate work done on the *Arrant* claim, on the one hand, and the appellate work done on *Whitehead* claim, on the other hand. Therefore, we reduce the appellate fee by $3,000.00.

We also sever and affirm the answers to Special Issues Nos. 1 and 2; these issues are not to be retried.

AFFIRMED as to Special Issues 1 and 2; AFFIRMED as to the attorneys' fees for the trial; REFORMED as to the attorney's fees for the Court of Appeals brief and oral submission; REVERSED AND REMANDED for new trial as to Special Issue No. 3.

BURGESS, Justice, concurring and dissenting.

I concur in the majority's analysis regarding special issue number 3, the dam-

ages issue, but express no opinion (neither attacking nor concurring) on the other issues. I respectfully dissent to the severance and partial remand under *TEX.R. APP.P. 81.* The majority only states that part of the rule justifying the severance, *i.e.,* "... and if it appears to the court that the error affects a part only of the matter in controversy and that such part is clearly separable without unfairness to the parties, the judgment shall only be reversed and a new trial ordered as to that part affected by such error...." The rule goes on to say, however, "... provided that a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested." There can be little argument that the damages are unliquidated. In other words, they cannot be determined from any instrument and there are actual factual disputes regarding the calculation of the damages. There can be no argument that the liability issues were contested, hence, under the current rule 81 and its predecessor, *TEX.R.CIV.P. 434,* there cannot, in my view, be a partial remand. *Little Darling Corp. v. Ald, Inc.,* 566 S.W.2d 347, 350 (Tex.Civ.App.—Dallas 1978, no writ). Because there was error in the damage issue, I would reverse and remand without reaching the other issues. Inasmuch as the majority affirms in part and orders a partial remand, I respectfully dissent.