# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 18, 2022

Lyle W. Cayce
Clerk

No. 21-20081

Ross Dress for Less, Incorporated,

*Plaintiff—Appellant*,

*versus*

ML Development, L.P.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USCS No. 4:20-CV-978

Before Barksdale, Engelhardt, and Oldham, *Circuit Judges*.

Per Curiam:[*]

This diversity action involves a drainage easement granted Ross Dress for Less, Incorporated (Ross), by ML Development, L.P. (ML), and arises out of land omitted mistakenly from the original land-purchase contract between them. At issue is whether the easement is an accord and satisfaction, discharging ML's tax obligations under the original contract. In awarding

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20081

summary judgment to ML, the district court concluded ML granted the easement in exchange for a discharge of those obligations. But, because there was no pre-existing dispute between the parties over those tax obligations, ML has not satisfied its burden to show the parties mutually agreed to a discharge of them. VACATED; judgment RENDERED for Ross; REMANDED.

I.

In 2018, Ross sought to purchase property in Waller County, Texas, for a new warehouse and distribution center. P150, LLC, a company formed solely to acquire the property before conveying it to Ross, entered into an agreement of purchase and sale of real property (PSA) with ML to acquire a 250-acre parcel of land for approximately $33 million.

The PSA contains a provision prorating specified taxes. The relevant provision, Section 6.6, provides:

> Real property taxes and the current installment of any special assessments approved by Purchaser in accordance with the provisions of Section 7.1 shall be prorated through Escrow to the Closing. All Roll Back Taxes shall be paid by the Seller.

(Regarding rollback taxes, unless a property-sales contract, such as the PSA, expressly specifies otherwise or includes a prominent warning, the seller of agricultural property in Texas typically must pay those taxes if there is a change in use of the land within five years. *See* TEX. PROP. CODE § 5.010(a), (d), (e); *see also* TEX. TAX CODE § 32.07(a).)

Due to drainage issues, and as covered by the PSA, the property was to be divided into two areas: the "Developable Property"; and the "Detention Area". Ross planned to build the distribution center in the Developable Property, with the Detention Area to be used for draining and detaining water flowing from other parts of the property.

2

No. 21-20081

Ross retained an engineering firm, Ward, Getz and Associates (WGA), to assess the drainage issues and determine a course of action. Any drainage projects had to be approved by the Brookshire-Katy Drainage District (BKDD). Ross was required eventually to grant title for the Detention Area, and any related drainage structures, to Waller County Road Improvement District No. 1 (Road District). Accordingly, the parties agreed in Section 4 of the PSA: BKDD and the Road District would determine the Detention Area's size; and, based on WGA's study, ML would decide the Detention Area's location.

The second amendment to the PSA identified the Detention Area's location. The amendment also noted: "Except as modified by this Agreement and the First Amendment, the PSA remains unchanged". (The first amendment modified Section 8.5 of the PSA; the third amendment deleted Sections 8.5 and 8.6. No amendment modified ML's tax obligations under the PSA.)

On 16 May 2019, the parties signed a "Temporary Easement", giving Ross access to additional land while constructing the drainage structures. The Temporary Easement described the consideration as "TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration". The next day, the parties closed on the property sale and executed a Tax Proration Agreement, which reaffirmed that ML would pay a prorated share of the 2019 real-property taxes.

Two months later, Ross discovered WGA had miscalculated the Drainage Area's location. This miscalculation left an area of the property landlocked, resulting in a small gap between a detention pond on one portion of the land and the drainage channel on the other. As a result, BKDD rejected the project.

To remedy this mistake, Getz of WGA requested from Magness, ML's representative, a narrow easement to connect the two portions. Getz noted that, without the easement, Waller County would likely condemn the land. Magness responded by email: "I am doing this as, a ONE TIME *personal favor to you*, *not to [Ross]*, not to the [Road] District, we are now even. Don't ask for anything else." (Emphasis added.) Attached to the email was a proposed agreement for the easement, entitled "Drainage Easement".

On 12 August 2019, Ross and ML executed the Drainage Easement, granting Ross "a nonexclusive perpetual right-of-way and easement" over the landlocked parcel "for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), and other good and valuable consideration . . . in hand paid to [ML] by . . . P150, LLC . . . or Ross". Paragraph 9 of the Drainage Easement provides:

> Notwithstanding anything to the contrary, the conveyance of this easement fulfills any and all contractual, moral, or ethical obligations that ML . . . may have had in the past or may have in the future to P150, LLC, . . . and/or its successor Ross . . . [;] ML . . . shall have no obligation to provide any easements, right-of-way or anything else of value to [Ross].

Property taxes, including rollback taxes and 2019 real-estate taxes, became due a few months after the Drainage Easement was executed. Because neither the PSA nor the Tax Proration Agreement specified otherwise, but rather reaffirmed ML's tax obligations, it was responsible for taxes totaling approximately $547,000: approximately $268,000 for rollback taxes; and approximately $279,000 for 2019 real-estate taxes. When Ross began receiving tax invoices from Waller County, it forwarded them to Magness.

After receiving delinquency statements from Waller County, Ross paid the taxes to avoid further penalties and requested reimbursement from

No. 21-20081

ML.  Magness responded:  "ML . . . has fulfilled all of [its] obligations to Ross".  Ross sued ML for breach of contract and unjust enrichment.

As discussed in detail *infra*, after cross-motions for summary judgment were filed, ML was granted leave to amend its answer to add accord and satisfaction as an affirmative defense (*ML had originally instead asserted the easement was a release from its tax obligations*), and the district court ordered supplemental briefing addressing the accord-and-satisfaction defense. Subsequently, the court granted summary judgment to ML, concluding that the above-quoted Paragraph 9 of the Drainage Easement constituted an accord and satisfaction, which discharged ML's tax obligations. Ross' motion for reconsideration was denied in January 2021.

II.

Ross asserts the Drainage Easement was not an accord and satisfaction of ML's $547,000 tax obligation.  Critical to that assertion is whether a pre-existing dispute existed between the parties.

A summary judgment is reviewed *de novo*.  *E.g.*, *Baylor Health Care Sys. v. Emps. Reinsurance Corp.*, 492 F.3d 318, 320–21 (5th Cir. 2007). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". FED. R. CIV. P. 56(a).  For deciding whether genuine disputes of material fact exist, facts in the summary-judgment record must be viewed in the light most favorable to the nonmovant.  *E.g.*, *Baylor*, 492 F.3d at 321.

Texas substantive law applies to this diversity action.  *E.g.*, *Greenwich Ins. Co. v. Capsco Indus., Inc.*, 934 F.3d 419, 422 (5th Cir. 2019).  "Under Texas law, [a]ccord and satisfaction, as a defense to a claim based upon a contract, exists when the parties have entered into a new contract, express or implied, which discharges the obligations under the original contract in a manner otherwise than as originally agreed."  *Baylor*, 492 F.3d at 321

5

No. 21-20081

(alteration in original) (citation omitted).  Because accord and satisfaction is an affirmative defense, the burden is on the party that pleads it:  in this instance, ML.  *F.T.C. v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 322 (5th Cir. 2004) ("An affirmative defense places the burden of proof on the party pleading it.").

In that regard, there must be more than payment or acceptance of money for there to be an accord and satisfaction.  *Baylor*, 492 F.3d at 321.  Critical to this case, "[a] valid accord and satisfaction requires that there *initially be a legitimate dispute between the parties* about what was expected".  *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 863 (Tex. 2000) (emphasis added) (quoting *Bueckner v. Hamel*, 886 S.W.2d 368, 372 (Tex. App. 1994)); *see also Baeza v. Hector's Tire & Wrecker Serv., Inc.*, 471 S.W.3d 585, 592 (Tex. App. 2015) ("If a pre-existing dispute is established, the . . . party [seeking the accord and satisfaction] must then establish that the parties 'specifically and intentionally agreed' that the tendering and acceptance of the [new agreement] would discharge the underlying obligation that formed the basis of their dispute".  (citation omitted)).

In addition to the requisite pre-existing dispute, "[t]here must be an 'unmistakable communication' establishing that performance according to the terms of the new agreement will satisfy the underlying obligation created by the original contract".  *Baylor*, 492 F.3d at 321 (citing *Pate v. McClain*, 769 S.W.2d 356, 361–62 (Tex. App. 1989)).  The communication "must be plain, definite, certain, clear, full, explicit, not susceptible of any other interpretation, and accompanied by acts and declarations that [the parties are] sure to understand".  *Id.*  (alteration in original).

An accord and satisfaction, however, need not be explicitly stated in the new agreement.  *Id.*  When considering whether a new agreement was executed to discharge a pre-existing obligation, courts may look to

surrounding circumstances. *Id.* "When the parties' intent is 'resting in implication,' however, the circumstantial evidence must '*irresistibly point to the conclusion*' that, in reaching a new agreement, the parties assented to a complete discharge of the original obligation." *Id.* (emphasis added).

### A.

Before reaching whether there was an accord and satisfaction, we turn, in the light of the very unusual procedural background for this appeal, to whether the pre-existing-dispute issue was preserved in district court. ML does not claim it was not preserved; but, no authority need be cited for the long-established rule that we, not the parties, make that determination.

After discovery, when the parties cross-moved for summary judgment, ML asserted Paragraph 9 constituted a "release" of its tax obligations. In response, Ross maintained that Paragraph 9 did not constitute a release and pointed out that ML "failed to plead accord and satisfaction". Ross also noted: Even if ML had pleaded accord and satisfaction, the language in Paragraph 9 did not meet the standards required for that affirmative defense; and, quoted Texas Supreme Court authority that an *underlying disputed obligation* is one of the conditions for an accord and satisfaction, citing *Lopez*, 22 S.W.3d at 863.

ML, realizing its mistake, moved, as noted, for leave to file an amended answer to add the affirmative defense of accord and satisfaction. At a Zoom hearing for oral argument on the cross-motions for summary judgment, the district court granted ML's motion to amend and ordered the parties to file simultaneous five-page supplemental briefs addressing accord and satisfaction. During the balance of the hearing, Ross noted, *inter alia*, that the at-issue Paragraph 9 of the Drainage Easement does not mention ML's tax obligations.

In its supplemental brief, *and favorably to Ross' position*, ML stated: "A valid accord and satisfaction requires that there initially be a *legitimate dispute* between the parties about what was expected", citing *City of Houston v. First City*, 827 S.W.2d 462, 472 (Tex. App. 1992) (emphasis added).   The balance of its brief, however, failed to discuss whether the requisite legitimate dispute existed, much less claim that it did.  Instead, ML repeatedly referred to the gap in the legal description of the land as a "mistake".  Quoting *Baylor*, 492 F.3d at 321, ML asserted the tax obligations were discharged, even though they weren't mentioned in the Drainage Easement, explaining: "[T]he new agreement need not explicitly state that it is intended to supersede the original contract".

Ross' supplemental brief did not use the term "pre-existing dispute". It did, however, discuss that, for an accord and satisfaction in Texas, there must be an underlying obligation's being satisfied by the new agreement and there must be an unequivocal specification of the obligation that is being satisfied.

The district court's ruling on the cross-motions for summary judgment did not address the pre-existing-dispute requirement for accord and satisfaction.   The court did state that there must be an underlying obligation that the new agreement satisfies and concluded Paragraph 9 sufficiently discharged ML's tax obligations.

Ross' earlier-referenced motion for reconsideration discussed at length the pre-existing-dispute condition.  It also noted the supplemental briefs were "limited to no more than five pages and focused only on legal arguments".  Ross asserted:  Because of this, it was "permitted to raise new arguments and evidence in [its] motion [to reconsider]", citing *Luig v. N. Bay Enters., Inc.*, 817 F.3d 901, 907 (5th Cir. 2016).

No. 21-20081

ML responded there was no support for Ross' assertion that the court ignored the pre-existing-dispute requirement. ML maintained: "A dispute did exist and [it] arose due to Ross's own mistake"—the need for the easement. Regarding whether the pre-existing-dispute issue had been preserved, ML did not assert that Ross had not done so. Nor did ML claim it would be prejudiced (which it would not be) by the court's considering that issue.

As noted, the motion was denied. The court concluded, *inter alia*, the pre-existing-dispute issue should have been raised earlier.

Based on these very unusual circumstances, the pre-existing-dispute requirement was sufficiently raised, especially because: We apply *de novo* review for the summary judgment; and the burden to show an accord and satisfaction is on ML. Most telling, ML does not assert on appeal that this issue was not preserved in district court; nor could it do so.

B.

As stated, the first condition for an accord and satisfaction is that a dispute existed between the parties prior to the new agreement. Ross contends: The property not included in the original contract was merely a mistake that the Drainage Easement remedied, "not a dispute about the tax obligations that ML . . . supposedly sought to discharge". Ross further points to Texas law to explain that the requisite dispute for an accord and satisfaction cannot be unrelated to the obligation a party seeks to discharge. *See Baeza*, 471 S.W.3d at 592 (explaining parties must agree "the tendering and acceptance of the [new agreement] would discharge the underlying obligation that formed the basis of their dispute").

ML maintains the requisite dispute is whether the property between the detention pond and the drainage channel should have been included in the original agreement: "This drainage easement would resolve the dispute

9

concerning what real property should have been . . . included in the original land conveyance, avoid condemnation proceedings, and avoid substantial delay to the development of Ross's largest warehouse and distribution center in the country". ML asserts it was undisputed that the land should have been included in the original conveyance.

During oral argument on appeal, ML contended that caselaw does not require the specific dispute at issue to be the subject matter of the accord and satisfaction. Relying on *Baylor* and *Pileco, Inc. v. HCI, Inc.*, 735 S.W.2d 561 (Tex. App. 1987), ML maintains the broad language contained in Paragraph 9 of the Drainage Easement is a catchall that covers the tax obligations imposed by the PSA. But, in both *Baylor* and *Pileco*, the dispute and the accord and satisfaction concerned the same subject matter. *See Baylor*, 492 F.3d at 319–20; *Pileco*, 735 S.W.2d at 561.

ML also noted during oral argument here: At the time the Drainage Easement was executed, all contractual obligations had been satisfied, except for ML's tax obligations; and, therefore, the Drainage Easement settled those remaining tax obligations. Nothing in the record, however, even suggests there was ever a dispute about those obligations.

To the contrary, the summary-judgment record reflects the Drainage Easement was executed to resolve the mistake that was made when the very small parcel of land was left out of the original $33-million agreement. As noted *supra*, Magness for ML referred to the easement as a "personal favor to [Getz of WGA]", with no hint of, much less reference to, a dispute.

For an accord and satisfaction, the pre-existing dispute, for obvious meeting-of-the-minds reasons, serves as consideration for the discharge of the obligation at issue. *See Hycarbex, Inc. v. Anglo-Suisse, Inc.*, 927 S.W.2d 103, 110 (Tex. App. 1996) (noting "the very existence of the dispute is the consideration for the accord and satisfaction"). In other words, the purpose

No. 21-20081

of identifying the dispute is obviously to put the parties on notice as to what is being discharged. The accord and satisfaction must, therefore, be based on the pre-existing dispute. But here, there was no dispute over whether ML owed tax obligations, or was seeking to avoid them, when the Drainage Easement was executed. ML has not met its burden for the dispute requirement.

Because no pre-existing dispute existed between the parties, we need not consider the "unmistakable communication" condition. In sum, the Drainage Easement was not an accord and satisfaction discharging ML's tax obligations.

### III.

For the foregoing reasons, the summary judgment awarded ML is VACATED; judgment is RENDERED for Ross; and this matter is REMANDED for any further proceedings, consistent with this opinion.